Sara K. Staggs, OSB No. 064822
**Attorney at Law**
1515 SW Fifth Avenue
Suite 808
Portland, Oregon 97201
Telephone: 971.254.4848
Facsimile: 503.228.1556
sara.k.staggs@gmail.com

      Attorney for Plaintiff

## UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **ALEXANDER HEAP,** | Case No.  14-cv-00105-HU |
| Plaintiff, | |
| | **FIRST AMENDED COMPLAINT** (14th Amendment: Delay and Denial of Medical Care, Unconstitutional Policy; Delay and Denial of Medical Care, Intentional Infliction of Emotional Distress) |
| v. | |
| **SERGEANT RED WORTHAM, DEPUTY GARGALIS, DR. McCARTHY, CORIZON HEALTH, INC., a corporation, WAHINGTON COUNTY, a political subdivision in the State of Oregon, JOHN AND JANE DOES, jail security and medical staff,** | 42 U.S.C. § 1983 **DEMAND FOR JURY TRIAL** |
| Defendants. | |

### INTRODUCTORY STATEMENT

1.      This is a civil rights action pursuant to 42 U.S.C. § 1983 filed by Plaintiff for

violations of his protected rights to be free from undue delay and denial of essential medical

care as a pre-trial detainee under the Fourteenth Amendment to the United States Constitution.

Page 1 – **FIRST AMENDED COMPLAINT**

Plaintiff also brings federal claims of policy violations by Washington County, as well as state claims of medical delay and denial of medical care and intentional infliction of emotional distress.

## JURISDICTION AND VENUE

2.      This court has jurisdiction over Plaintiff's claim of violations of federal constitutional rights pursuant to 28 U.S.C. § 1331 and § 1343. This action is authorized and instituted pursuant to 42 U.S.C. § 1983.

3.      This court has jurisdiction over Plaintiff's state law claims set forth in this complaint pursuant to supplemental jurisdiction to hear related state law claims under 28 U.S.C. § 1367(a). Both the federal and state claims alleged herein arose from a common nucleus of operative fact, the state actions are so related to the federal claims that they form part of the same case or controversy, and the actions would ordinarily be expected to be tried in one judicial proceeding.

4.      Plaintiff provided a timely notice of tort claim for all actions alleged herein caused by all defendants.

5.      Actions complained of herein took place within the jurisdiction of the United States District Court, District of Oregon in that one or more of the defendants reside in the District of Oregon and Plaintiff's claims for relief arose in this District.  Accordingly, venue in this judicial district is proper under 28 U.S.C. § 1391.

## PARTIES

Page 2 –**FIRST AMENDED COMPLAINT**

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

6.      Plaintiff was at all relevant times a pre-trial detainee in the custody and control

of the Washington County Sheriff and housed at the Washington County Jail in Washington

County, Oregon.

7.      Defendant Red Wortham was at all times a law enforcement officer employed

by Washington County Jail.  Defendant Wortham is sued in her individual capacity.

8.      Defendant Gargalis was at all times a law enforcement officer employed by

Washington County Jail.  Defendant Gargalis is sued in his individual capacity.

9.      Defendant McCarthy was at all times employed either by contract or directly as

a physician for the Washington County Jail, and was responsible for providing medical care to

inmates and pretrial detainees at Washington County Jail.  He is sued under the state action

rule for providing essential government services under the 14th Amendment.  Defendant

McCarthy is also sued in his individual capacity.  He was acting under the color of law at all

times herein.

10.     Defendants John and Jane Does ("Defendant Does") are jail medical staff and/or

security staff responsible for Plaintiff's day-to-day living conditions, making accommodations

of Plaintiff's living conditions and medical treatment, providing essential medical care, and

ensuring the safe incarceration of Plaintiff.  These defendants are each sued in their individual

capacity and will be named individually as discovery is obtained.

11.     Defendant Corizon Health, Inc. ("Corizon") is a Delaware Corporation

providing full service to municipal jails and detention facilities.  Corizon contracted with

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

Washington County to provide medical staffing, pharmaceuticals, hospitalization, dentistry, and other specialty medical services.   At all material times, the contract between Washington County and Corizon was in effect.  Corizon is sued under the state action rule as a municipal actor, and is sued for its liability in the torts alleged herein of its employees.

12.    Defendant Washington County is a municipal subdivision of the State of Oregon.  As a local government entity, Defendant Washington County is a suable person under 42 U.S.C. § 1983.  At all times relevant to this Complaint, Defendant Washington County employed Defendant Wortham, Defendant Gargalis, Defendant McCarthy, and Defendant Does.  All times relevant to this Complaint, Defendant Wortham, Defendant Gargalis, Defendant McCarthy, and Defendant Does were acting pursuant to Defendant Washington County's laws, customs, and/or policies.  As the employer of Defendant Wortham, Defendant Gargalis, Defendant McCarthy, and Defendant Does, Defendant Washington County is vicariously liable for all of the tortous and unconstitutional acts and omissions of the defendants committed within the course and scope of their employment, pursuant to ORS 30.265. Washington County is sued both for its own policies, which caused Plaintiff constitutional deprivations, and for the tortuous acts of its employees.

13.    All defendants have acted under color of state law at all times relevant to this Complaint.

14.    Plaintiff is entitled to an award of attorneys fees and costs, pursuant to 42 U.S.C. § 1988.

Page 4 –**FIRST AMENDED COMPLAINT**

## FACTUAL BACKGROUND

15.     Plaintiff was booked at Washington County Jail on or around January 5, 2013.
On his initial medical screening, Plaintiff reported that he was allergic to contrast dye and
opiates.  There was no indication of Plaintiff being in severe pain or needing urgent/emergent
medical care at this time.

16.     On or around January 16, 2013, Plaintiff was given a "Health Assessment" at
Washington County.  The nurse noted "many decayed teeth" and "molars at gum lines."
Around the end of February 2013, Plaintiff put in a kyte to see a medical provider in
connection with his teeth.  The nurse who screened the kyte asked Plaintiff if he could take
amoxicillin.  Plaintiff replied that he could take amoxicillin, as he had taken it in the past, but
could not take penicillin because of an allergy.  The nurse told Plaintiff that he would be put on
amoxicillin before seeing a dentist.  At the time, Plaintiff was also on a muscle relaxer,
ibuprophen, and Tylenol for pain in his shoulder.  All of these medications were prescribed by
Defendant McCarthy and/or another medical worker at Washington County Jail.

17.     On or around the end of February 2013, Plaintiff went to the medication line
and received his first dose of what he believed was amoxicillin.  He told the pill nurse that he
was allergic to penicillin, and asked what the pill was.  The pill nurse on duty replied, "It's a
substitute for amoxicillin."  She told Plaintiff that he would be fine taking the pill.  Plaintiff
asked the nurse why he was taking so many pills at once, especially pills that are hard on the

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

stomach.  The nurse responded by saying that she was a nurse, and that the medical staff had a handle on the situation.  Plaintiff swallowed the pill and went back to his cell.

18.     Plaintiff started taking the new pill three times a day.  On the third day of taking what he thought was amoxicillin or a similar substitute, he began to experience severe pain. He began to have blood in his stool.

19.     On or around February 26, 2013, the third or fourth day of taking the new pill, the pain had increased to a point where it was difficult for Plaintiff to get out of bed.  Plaintiff was crying in pain, coughing up blood, throwing up blood, and his stool was laced with blood. The pain spread from his abdomen to his chest area.  His chest turned bright red down to his pelvis.  He was unable to eat or sleep.  He was itching in his chest area.  Plaintiff told the pill nurse on duty that evening, and was told that he needed to finish the medication regimen.

20.     Around 2:30 a.m., on or around February 27, 2013, Plaintiff got up to take his pills.  He could not go back to sleep because of the pain.  He tried to go to the bathroom and had blood in his stool again.  He then threw up blood into the toilet.  The entire toilet was filled.  At about 3:45 a.m., Plaintiff asked his cellmate to push the call button to alert a deputy. The call button is for emergencies and calls the control desk.  Plaintiff's cellmate pressed it, and someone finally responded.

21.     Plaintiff told the responding deputy that he had a reaction to the medication. Plaintiff told the deputy that he was in pain, he was lightheaded, dizzy, throwing up blood, and that there was a toilet full of blood.  The deputy told Plaintiff that they would send someone

Page 6 –**FIRST AMENDED COMPLAINT**

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

down to check on Plaintiff.  About 30-45 minutes later, there was still no deputy to check on

Plaintiff nor did any medical staff respond.

22.    Plaintiff and/or his cellmate pushed the call button again that morning.  A

deputy responded and Plaintiff asked if anyone was coming.  A deputy came by on his morning

rounds and looked in Plaintiff's cell.  He asked, "What's going on?" Plaintiff told the deputy

about his situation.  The deputy told Plaintiff that he would inform medical, but that the nurse

was in her pill line and no one was available.

23.    When Plaintiff went to breakfast that day, medical staff still had not come.

Plaintiff asked the deputy on duty where medical staff was.  The deputy said someone was

coming, but that the nurse was still busy.  The deputy saw Plaintiff's toilet full of blood, and

contacted medical staff to ask what to do with the blood.  The medical staff said not to flush

the toilet, but to leave the blood for someone to look at.  Plaintiff went and curled up on his

bunk in pain.  Medical staff never came.  When Plaintiff asked the deputy on the second

morning rounds if medical staff was coming, the deputy radioed medical.  They told Plaintiff to

flush the toilet.  No one came and Plaintiff did not receive a medical examination that day.

24.    By the fourth or fifth day of taking the medication, Plaintiff was coughing up

blood regularly.  He was unable to eat or sleep.  Plaintiff's symptoms continued as he

continued to take the pill that he thought was amoxicillin or a similar substitute.  On or around

the fourth or fifth day, when Plaintiff and/or his cellmate called the guards to help, they were

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

told to "shut up and deal with it." One law enforcement official did say, "It's messed up, them giving you penicillin." However, nothing was done to remedy the situation.

25.    When Plaintiff waited in the noon med line, on or about February 27, 2013 – the fourth or fifth day of taking the medication - there was a new nurse on pill duty. Plaintiff told the nurse everything that had happened the night before. When Plaintiff asked the nurse what he was taking, she replied, "You are taking penicillin." She said that he had been taking penicillin the whole time. Plaintiff was also on the other medications. Plaintiff told the nurse that he could not take penicillin, and that the allergy was noted in his medical files. He told the nurse that he was going to stop taking the penicillin and ibuprophen right away. The nurse told Plaintiff that he needed to keep taking the medications despite his reaction, as he only had a few days left. Plaintiff refused and stopped taking those medications right away.

26.    Plaintiff stopped taking the penicillin on or around February 28, 2013; however, the pain, blood in the stool, and vomiting continued. Plaintiff was still not able to eat or drink without bleeding more. Throughout the course of the week, Plaintiff had filed Heath Care Requests and kyted medical 1-2 times a day, informing Washington County employees that he was having an allergic reaction to penicillin, including vomiting, bruising in the stomach area, and unbearable stomach cramps. He did not receive any response.

27.    The pain continued, and on or around March 2, 2013, Plaintiff filed a grievance about the situation through Defendant Gargalis. Also, on or about March 2, 2013, Plaintiff was seen at general sick call by a nurse. The nurse reported that Plaintiff had blood in his stool and

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

abdominal pain.  She noted that Plaintiff was allergic to penicillin and that he had been given

penicillin at Washington County Jail.  A visit with Defendant McCarthy was scheduled for

March 13, 2013 – over two weeks after the initial complaint and pain.

28.     It took two more days after the grievance was filed before Defendants

responded to Plaintiff.  On or about March 4, 2013, Plaintiff was given stool cards to retrieve

samples and a biohazard bag.  The nurse who saw Plaintiff looked at his chest and asked if he

had ever had hemorrhoids.  This was the extent of the medical care Plaintiff received, even

though at this time he was still experiencing severe pain, his chest was still red, and he had

trouble even getting out of bed.  Blood was found in two out of the three stool cards.

29.     On March 7, 2013, Plaintiff received a blood test, and a complete blood count

("CBC") was run.  The results of the CBC came back with abnormal amounts of mean

corpuscular hemoglobin concentration ("MCHC") and eosinophil count ("EOS") – both were

above range.  MCHC measures the hemoglobin amount in red blood cells.  The test looks at the

average amount of hemoglobin per red cell.  The reference range of MCHC in Plaintiff's test

was 29.0 – 35.0 gm/dL.  Plaintiff's result was 35.8 gm/dL.  The result of Plaintiff's EOS test

was also high: 9.4%.  The reference range for EOS in the CBC was 0.0 – 8.0%.  A high result

of EOS can indicate, among other things, allergies to medications.

30.     At Plaintiff's medical appointment on March 13, 2013, in which he was

scheduled to meet with Defendant McCarthy, Plaintiff spent the majority of time with a nurse.

The nurse spoke with Defendant McCarthy outside of Plaintiff's presence, and said that

Page 9 –**FIRST AMENDED COMPLAINT**

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

Plaintiff was going to be put on Prilosec, Zantac, and given suppositories.  Defendant

McCarthy came in briefly, told Plaintiff that they were going to be putting him on these

medications, and that these medications should help heal his stomach.  Then, Defendant

McCarthy told Plaintiff that he was busy, and left.  After leaving, Plaintiff was given a sack

lunch full of sugar and acidic food.

31.    When Plaintiff left Washington County Jail on or around May 27, 2013, he was

just getting over the reaction to the medication.  Plaintiff's chest had returned to an almost-

normal color.  He was finally able to eat.  He had to take antacids every day for almost a year

to keep his stomach from being in pain.  He did not have to do this before February 2013, when

Defendants gave him penicillin and then ignored his calls for medical attention and help.  For

almost a year after this incident, Plaintiff's lactose intolerance was worse.

32.    During the course of this ordeal, Plaintiff felt like he was dying, and suffered

severe trauma from this suffering. Plaintiff felt like he was left for dead. He was in such pain

and was constantly throwing up blood, and did not have anyone to help him.  This experience

was traumatizing. He was neglected and abused by Defendants. Plaintiff is still affected

emotionally by the actions and inaction of Defendants.

33.    The medical staff knew or should have known about Plaintiff's medical history,

including the medication that he was taking and his allergy to penicillin.  Plaintiff told a nurse

before he started taking the penicillin that was allergic to it, and such an allergy was either

noted or should have been noted in Plaintiff's medical file in Washington County.  In addition,

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

Defendants refused to help Plaintiff when he asked for help and obviously had a serious medical condition.

34.    This is not unusual behavior at Washington County Jail.  The jail does not give inmates or pretrial detainees medical attention when it is needed, instead ignoring inmates' medical issues.  The jail lets its pretrial detainees and inmates suffer instead of providing them with the care that they are owed by the Constitution of the United States.  This culture of lack of medical assistance is supported by the actions of the law enforcement officers and the medical staff at the Washington County Jail.

35.    Defendants' actions and failure to act deprived Plaintiff of his particular rights as alleged herein.  Those acts and failures to act were closely related to the deprivation of Plaintiff's rights so as to be the moving force that caused his injuries.

36.    The County's failure to meaningfully act after it deprived Plaintiff of his particular rights as alleged herein was closely related to the deprivation of Plaintiff's rights so as to be the moving force that caused his injuries.

**<u>FIRST CLAIM FOR RELIEF: Failure to Provide Adequate Medical Care</u>**
**Against Defendants Wortham, Gargalis, McCarthy, Does, and Corizon**
**42 U.S.C. § 1983 Violation of the 14th Amendment**

37.    Plaintiff incorporates by reference paragraphs 1 through 36 as though set forth herein.

Page 11 –**FIRST AMENDED COMPLAINT**

38.     As a pre-trial detainee, Plaintiff has a protected liberty interest under the Due Process Clause to the 14th Amendment of the United States Constitution to reasonably safe conditions of confinement and to adequate medical care while in custody.

39.     Person who are pre-trial detainees are entitled to more considerate treatment and conditions of confinement and those conditions of confinement are not designed to punish the committed person.

40.     The actions of Defendant Wortham, Gargalis, McCarthy, Does, and Corizon in the treatment, evaluation and management of Plaintiff were such a substantial departure from accepted professional judgment, practice or standards as to be so objectively unreasonable to demonstrate that they did not base any treatment decision for Plaintiff on medical judgment or by any given medical standard of care.  In fact, the departure by Defendants from the accepted standard of care for Plaintiff was so extreme as to constitute a deliberately and grossly incompetent action.  These standards of care and legal responsibilities were clearly established at the time of actions against Plaintiff, and Defendants knew of those standards and intentionally failed to adhere their conduct to them.  The actions by the Defendants herein who have no medical training were a violation per se.

41.     The actions of Defendants which constitute a substantial departure from the acceptable standards of care required under the 14th Amendment of the United States Constitution and which were deliberately indifferent to the protected rights of Plaintiff were:

Page 12 –**FIRST AMENDED COMPLAINT**

a) Defendants failed to provide adequate and timely medical care to Plaintiff, including, without limitation, adequate medication, adequate evaluation of his medical condition, adequate access to qualified physicians for the medical condition Plaintiff demonstrated, access to equipment or personnel to provide physical evaluation and treatment of Plaintiff's symptoms;

b) Defendants Wortham, Gargalis, and Does who were security personnel are not medically trained personnel and any decision they made concerning a medical request was unconstitutional per se;

c) Defendants should have consulted with medical experts for the treatment of Plaintiff but failed to do so;

d) Defendants unconstitutionally allowed non-medical reasons to interfere with medical decisions for Plaintiff, namely cost, time required for care, and allowing non-medical staff to interfere with medical decisions.

42.     As a result of the conduct by the named defendants in deliberately failing to protect Plaintiff, Plaintiff was left vomiting blood, with bloody stool, unable to eat, in severe pain, unable to stand or walk, and with long-lasting medical conditions.  Plaintiff was denied treatment for his condition.  He was in pain and discomfort and required to live in substandard and unhealthy living conditions.

43.     All defendants' conduct was well defined by law and each defendant knew or reasonably should have known that their conduct would fall well below the standard prescribed

Page 13 –**FIRST AMENDED COMPLAINT**

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

by law herein.

44.     As a result of the conduct by Defendants in deliberately failing to provide adequate medical treatment to Plaintiff, Plaintiff suffered a loss of his physical condition and severe mental anguish.  The extent of Plaintiff's damages will be more fully proven at trial

### SECOND CLAIM FOR RELIEF: *Monell* Claim for Unconstitutional Municipal Policy 42 U.S.C. § 1983 Violation of the 14th Amendment by Defendant Washington County

45.     Plaintiff incorporates by reference paragraphs 1 through 44 as if more fully set forth herein.

46.     At all material times, Washington County Sheriff's Office had an official and/or unofficial policy or practice which allowed or facilitated the deprivation of safe, sanitary, and humane conditions of confinement, including adequate and timely medical care for pretrial detainees.

47.     As a result of the unconstitutional policy or practice which was promoted, allowed, and/or facilitated within the Washington County Sheriff's Office, pretrial detainees and inmates are not provided with adequate medical care, including but not limited to, access to medical personnel, medication, or medical facilities or treatment.

48.     As a result of this official or unofficial policy, custom or practice to deny pretrial detainees and inmates adequate medical treatment, Plaintiff suffered a direct loss of his constitutional rights to safe and humane conditions of confinement, including timely and appropriate medical care.  Plaintiff's injuries will be more fully proven at trial.

Page 14 –**FIRST AMENDED COMPLAINT**

## SUPPLEMENTAL STATE CLAIMS

### THIRD CLAIM FOR RELIEF: Delay and Denial of Medical Care
**Against Defendants Wortham, Gargalis, McCarthy, Does, Corizon and Washington County**

49.    Plaintiff incorporates by reference paragraphs 1 through 48 as though set forth herein.

50.    The actions by Defendants Wortham, Gargalis, McCarthy, Does, Corizon and Washington County were reckless and/or deliberately indifferent, and a violation of the standard of care in the following particulars:

a.)    Defendants did not adequately monitor and respond to Plaintiff's physical condition, did not provide adequate access to medical staff, medication, and adequate medical facilities, even though aware of Plaintiff's serious medical needs.

b.)    Defendants failed to treat Plaintiff's medical condition, ignored his complaints, and failed to provide timely evaluation for Plaintiff's medical condition, causing him to suffer extreme pain and injury as described above;

c.)    Defendants allowed nonmedical reasons to interfere with Plaintiff's serious medical needs.

51.    Each of the actions described above were performed by Defendants while they were acting within the course and scope of their employment.

Page 15 –**FIRST AMENDED COMPLAINT**

52.    Defendants' conduct was well defined by law and each defendant knew or reasonably should have known that their conduct was not only well below the standard prescribed by law herein, but was illegal per se.

53.    As a result of the course of conduct by Defendants, Plaintiff has suffered physical and emotional injury.  The extent of Plaintiff's injuries will be more fully proven at trial.

### FOURTH CLAIM FOR RELIEF: Intentional Infliction of Emotional Distress
**Against All Defendants**

54.    Plaintiff incorporates by reference paragraphs 1 through 53 as though set forth herein.

55.    Plaintiff alleges that on or about February 2013 – March 2013, he was subject to intentional infliction of emotional distress by Defendants in the following manner:

a.)    Plaintiff was forced to live with a serious medical condition of which Defendants knew he was suffering, but allowed him to suffer for days.

b.)    Plaintiff's numerous requests for help were ignored by Defendants, even though they knew or should have known of these requests for help for his serious medical condition.

c.)    Plaintiff did not know when or if he was going to receive help for his medical condition, as he did not receive any medical treatment for days, even though Defendants were alerted to his medical condition and knew he was suffering.

Page 16 –**FIRST AMENDED COMPLAINT**

56.    Defendants' conduct was outrageous in the extreme and Defendants acted intentionally and/or recklessly to inflict severe emotional distress.

57.    Defendants were acting in the course and scope of their employment during the alleged acts that intentionally inflicted emotional distress on Plaintiff.

58.    Defendants' acts described above caused Plaintiff to suffer severe emotional harm or created circumstances in which it was substantially certain that such harm would result.

59.    As a result of Defendants' extraordinary acts, plaintiff suffered severe emotional harm as alleged herein.  The extent of Plaintiff's damages will be more fully proven at trial.

60.    Defendants' actions were intentional, willful, and with reckless disregard to Plaintiff's statutory rights.  Such conduct exceeded the bounds of social toleration and is of the type that punitive damages deter.  Plaintiff thereby requests an award of punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.    On all claims for relief Plaintiff prays for judgment finding that his protected constitutional rights as a pre-trial detainee were violated;

2.    Findings that Defendants failed to provide adequate medical care and treatment;

3.    Findings that Defendants promoted a defective policy within the jail of neglecting pretrial detainees' and inmates' medical needs;

4.    Findings that Defendants inflicted severe emotional distress on Plaintiff by

Page 17 –**FIRST AMENDED COMPLAINT**

**Law Office of Sara K. Staggs**
1515 SW Fifth Avenue
Suite 808
Portland, OR 97201
T: 971.254.4848

deliberately denying him medical care;

5.      Damages for physical and mental injuries, pain and suffering, and emotional

trauma in an amount to be proven at trial;

6.      Punitive damages in an amount to be proven at trial;

7.      Reasonable attorneys fees, costs and prejudgment interest incurred in pursuing

this action; and

8.      Any such relief that this court deems just and equitable.

Plaintiff demands a jury trial on all questions of fact or combined questions of law and

fact raised by this complaint.


DATED:  18TH day of February, 2014

Respectfully submitted,

 /s/ Sara K. Staggs
Sara K. Staggs, OSB 064822
Attorney for Plaintiff


Page 18 –**FIRST AMENDED COMPLAINT**